## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TIFFANY JADE SMITH** | * | |
| **3318 Curtis Drive, Apt. 202** | | |
| **Suitland, MD 20746,** | * | |
| *on behalf of herself and all others* | | |
| *similarly situated,* | * | |
| | | |
| *Plaintiff,* | * | |
| | | |
| **v.** | * | **Civ. Action No.: 1:16-cv-968** |
| | | |
| **ANNAPOLIS JUNCTION RAIL** | * | |
| **SOLUTIONS, LLC** | | |
| | * | |
| Serve on: | | |
| **National Registered Agents Inc.** | * | |
| **351 W. Camden Street** | | |
| **Baltimore, MD 21201** | * | |
| | | |
| **and** | * | |
| | | |
| **NORTH AMERICAN RAIL** | * | |
| **SOLUTIONS, LLC** | | |
| | * | |
| Serve on: | | |
| **James R. Walker, Jr.** | * | |
| **Registered Agent/President** | | |
| **1726 Kingsley Ave, Suite 28** | * | |
| **Orange Park, FL 32073** | | |
| | * | |
| **and** | | |
| | * | |
| **CSX TRANSPORTATION, INC.** | | |
| | * | |
| Serve on: | | |
| **Corp. Creations Network, Inc.** | * | |
| **2 Wisconsin Circle, #700** | | |
| **Chevy Chase, MD 20815,** | * | |
| | | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Tiffany J. Smith ("Ms. Smith"), on behalf of herself and all others similarly situated, by counsel, seeks judgment against defendants and states as follows:

## PRELIMINARY STATEMENT

1.     This is a class action lawsuit for statutory and punitive damages, costs, and attorney's fees brought pursuant to 15 U.S.C. §§ 1681a–x (the Fair Credit Reporting Act or "FCRA"). The FCRA imposes several important procedural requirements on persons that use a consumer's employment background check—a "consumer report"—that are designed to protect consumers like Plaintiff.

2.     Plaintiff applied for employment with Defendant Annapolis Junction Rail Solutions, LLC ("Defendant Annapolis"). Defendant Annapolis is a subcontractor of Defendant North American Rail Solutions, LLC ("Defendant North"). Defendant Annapolis and Defendant North require access to property owned or controlled by Defendant CSX Transportation, Inc. ("Defendant CSX") in order to conduct business. Defendant Annapolis extended an offer of employment to Plaintiff conditioned on the results of her background check. Defendant Annapolis's hiring criteria is dictated and controlled by Defendants North and CSX. Collectively, Defendants Annapolis, North, and CSX obtained and used a consumer report regarding the Plaintiff in whole or in part to take an adverse action as to her employment.

3.     Because this consumer report falsely branded Plaintiff a felon, Defendants North and CSX instructed Defendant Annapolis to terminate Plaintiff's employment, without notice to Plaintiff, and publicly escorted her from the premises. By taking an adverse action against Plaintiff based in whole or in part on a consumer report, Defendants each failed to comply with the procedural protections and requirements imposed by 15 U.S.C. § 1681 b(b)(3).

**JURISDICTION**

4.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

**PARTIES**

5.     Plaintiff is a natural person and a "consumer" as defined by the FCRA.

6.     Defendant Annapolis Junction Rail Solutions, LLC is a Florida limited liability company doing business in this District and Division.

7.     Defendant North American Rail Solutions, LLC is a Florida limited liability company doing business in this District and Division.

8.     Defendant CSX Transportation, Inc. is a Florida corporation doing business in this District and Division.

9.     At all times pertinent to this litigation, Defendants were all regular "users" of "consumer reports" who took "adverse actions" against "consumers" in the "employment" context as those terms are defined in the FCRA.

**BACKGROUND**

10.     Non-party E-Verifile.com is a consumer reporting agency that offers a program to its railroad clients named e-RAILSAFE which is a background screening program that is designed to serve "Class 1 Railroads" with operations in the United States.

11.     According to E-Verifile, seven railroads currently participate in the e-RAILSAFE program: BNSF, Canadian Pacific, Canadian National, Conrail, Defendant CSX, Norfolk Southern, and Union Pacific.

12.     These railroads then hire contractors, such as Defendant Annapolis and Defendant North, to work on their properties. Every person that works for these contractors—

consumers like Plaintiff Smith—must submit to background checks.

13.    The e-RAILSAFE program allows each railroad to monitor and maintain a history of anyone that has had or currently maintains access to their property. All contract personnel must undergo a background check and receive a proper identification badge to gain access to the railroad property. Consumers who cannot obtain this certification are unable to work for Defendants.

14.    Consumers are instructed to sign a written consent form agreeing to the procurement of a consumer report through E-Verifile which states, in pertinent part:

> I, the undersigned, hereby consent and authorize _____, its affiliated companies, and/or its agents (collectively, herein after referred to as "the Company") to obtain information about me from a consumer reporting agency for employment purposes. I understand that this means that a "consumer report" and/or an "investigative consumer report" may be requested…
>
> The Company also reserves the right to share background investigation results with any third-party companies for whom I will be placed to work with as a representative of the Company….
>
> I AUTHORIZE E-VERIFILE TO OBTAIN A CONSUMER REPORT AND/OR INVESTIGATIVE CONSUMER REPORT ON ME…

(emphasis in original).

15.    The e-RAILSAFE program lists the following criteria for denial of access to any railroad properties:

        a.    Conviction of a felony offense in the last 7 years

        b.    Release from a penal institution/probation/parole in the last 5 years

        c.    Active misdemeanor and felony warrants

        d.    Any pending felony charge

        e.    Social Security fraud alerts

        f.    A history of crimes of concern

g.     Out of service area

h.     Permanent Disqualifier

i.     Background Check canceled by Contractor

16.     Any consumer that is denied access through one of the above listed items is notified in writing of the final denial decision by a uniform, written adverse-action notice. The potential employer or employer—like Defendants here—is also provided with a copy of the notice.

17.     E-Verifile applies the above restrictions to background reports that it runs for employers like Defendants through the e-RAILSAFE program. Using the railroads' criteria, E-Verifile reviews the results of its background reports and adjudicates or codes the consumer as "denied" or "approved." An adjudication of denied is an adverse-employment action because it makes them ineligible for access, and therefore employment, with e-RAILSAFE's participants like Defendants.

18.     When a consumer is denied access, the e-RAILSAFE program automatically creates the uniform, written adverse-action notice which states, in pertinent part:

> Your e-RAILSAFE application for access to [**NAME OF RAILROAD**] property has been **denied**, and, therefore, you are ineligible to receive the required security clearance.
>
> **You were disqualified because of the following reason(s):**

(emphasis in original).

19.     The e-RAILSAFE program strictly adheres to its criteria for denial of access and there is no discretion as to how the criteria is applied. E-Verifile applies the decision matrix as-is and has no discretion to depart from it.

20.     According to E-Verifile, the railroads that participate in the e-RAILSAFE

program are responsible for the screening criteria listed above. However, E-Verifile further states that the e-RAILSAFE program was developed by the railroads in partnership with E-Verifile.

21.     The potential employers or employers like Defendants are required to accept the results from the e-RAILSAFE background checks as true and are required to bar or remove any denied consumers from the railroads' properties. Denied access to these properties is tantamount to the denial of employment.

22.     At no point in time are any FCRA notices sent to the consumer.

### Ms. Smith's Facts

23.     In or around March 2014, Plaintiff sought employment with Defendant Annapolis.

24.     Defendant Annapolis conducts its entire business on property owned and/or controlled by Defendant CSX.

25.     As part of the application process, Ms. Smith was required to sign a written consent form agreeing to the procurement of a consumer report (background check) through E-Verifile's e-RAILSAFE program.

26.     On or about March 24, 2014, Ms. Smith was hired conditioned upon the background check.

27.     Defendant Annapolis sought a background check concerning Ms. Smith from E-Verifile, through the e-RAILSAFE program, who in turn purchased public-record information from non-party Sterling Infosystems-Ohio, Inc. ("Sterling").

28.     On or around March 28, 2014, E-Verifile received a request for Plaintiff's consumer report from Defendant Annapolis through Defendant North's e-RAILSAFE account.

The permissible purpose to access Plaintiff's consumer report was employment related.

29.     E-Verifile purchased, among other things, public record information about Plaintiff from Sterling.

30.     On or around April 4, 2014, E-Verifile produced a consumer report that contained public record information likely to have an adverse effect upon Plaintiff's ability to obtain employment (i.e., a felony conviction).

31.     E-Verifile then resold information from Sterling to Defendants Annapolis, North, and CSX for the purpose of determining eligibility for employment. Thus, E-Verifile was both a user of Plaintiff's consumer report as well as a consumer reporting agency.

32.     E-Verifile knew that the report that it was selling to Defendants Annapolis, North, and CSX was being used for an employment purpose. Defendants likewise knew the report about Plaintiff was for an employment purpose.

33.     On April 11, 2014, Defendant Annapolis received a standard, written adverse-action notice from E-Verifile regarding Plaintiff's background report that stated, in pertinent part:

> Your e-RAILSAFE application for access to **CSX Transportation (CSX)** property has been **denied**, and, therefore, you are ineligible to receive the required security clearance.
>
> **You were disqualified because of the following reason(s):**
> * A background investigation indicated a felony conviction within the last 7 years. (CSX)

(emphasis in original).

34.     Plaintiff had no explanation for the felony conviction appearing on her consumer report because it was false.

35.     On April 11, 2014, the same day as the standard, written adverse-action notice

was dated, Plaintiff Smith was fired on the spot by Defendant Annapolis and escorted off Defendant CSX's property.

36.     The FCRA defines an adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," or any "action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(ii), (iv).

37.     E-Verifile, Defendant Annapolis, Defendant North, and Defendant CSX did not provide Plaintiff with timely notice required by the Fair Credit Reporting Act prior to taking the adverse action against her.

38.     Additionally, Defendant Annapolis, Defendant North and Defendant CSX's conduct against the Plaintiff and the putative class members was willful.

39.     Upon information and belief, Defendant Annapolis, Defendant North, and Defendant CSX have purchased consumer reports, including criminal background reports, from consumer reporting agencies trafficking in the reputations of America's workforce, which are used as a basis for taking adverse actions against job applicants.

40.     As a matter of practice, E-Verifile, Defendant Annapolis, Defendant North, and Defendant CSX regularly and consistently fail to provide the "adverse action notice" to consumers as required by 15 U.S.C. § 1681b(b)(3).

41.     Defendant Annapolis, Defendant North, and Defendant CSX's procedures and conduct were carried out as Defendants intended and were not a mere accident or mistake. Instead, their actions constituted standard procedures and policies of conducting business.

42.     Defendant Annapolis, Defendant North, and Defendant CSX are well aware of their legal obligations under the FCRA. These obligations are well established in the plain

language of the FCRA and in the promulgations of the Federal Trade Commission and the Consumer Financial Protection Bureau.

43.     Further, upon information and belief, Defendant Annapolis, Defendant North, and Defendant CSX obtained or had available substantial written materials that informed them of their duties under the FCRA.

44.     Defendant Annapolis, Defendant North, and Defendant CSX's conduct was willful and entitles Plaintiff and the putative Class Members to recover punitive damages for their violations of the FCRA.

### COUNT I: VIOLATION OF 15 U.S.C. § 1681b(b)(3)
### Class Claim against Defendant Annapolis

45.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

46.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "Annapolis Class") against Defendant Annapolis, defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) within the two years immediately preceding the filing of this Complaint; (a) who authorized E-Verifile to obtain a consumer report for an employment purpose; (b) where Annapolis used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one criteria for denial of access to CSX property; (d) Annapolis relying on such consumer report, in whole or in part; took adverse action against such person; and (f) where Annapolis failed to provide such person with a copy of their E-Verifile consumer report and a description in writing of the rights of such person under 1681g(c)(3) before taking such adverse action.

47.     **Numerosity.  FED. R. CIV. P. 23(a)(1).** The Class Members are so numerous that joinder of all is impractical. Plaintiff estimates that the Annapolis Class is comprised of potentially dozens of consumers. The names and addresses of the Annapolis Class Members

are identifiable through documents maintained by Annapolis and the Annapolis Class Members may be notified of the pendency of this action by published and/or mailed notice.

48.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Annapolis Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant Annapolis provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether Defendant Annapolis's conduct violated the FCRA; and (c) whether Defendant Annapolis acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

49.   **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Annapolis Class Member and all are based on the same facts and legal theories. Upon information and belief, it is Defendant Annapolis's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Annapolis Class.

50.   **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Annapolis Class. Plaintiff has retained Counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such

responsibilities.

51.    **Superiority.  Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Annapolis Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant Annapolis's conduct. It would be virtually impossible for the members of the Annapolis Class, individually, to redress effectively the wrongs done to them. Even if the members of the Annapolis Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant Annapolis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

52.    Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

53.    **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual Annapolis Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

54.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendant Annapolis acted on grounds generally applicable to the Class thereby making appropriate declaratory relief with respect to the Class as a whole.

55.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the Annapolis Class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.   Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Defendant Annapolis's FCRA violations would likely be unaware of their rights under the law, or of whom could represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant Annapolis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set

the law as for every similarly situated consumer.

56.     Defendant Annapolis's failure to timely provide the required FCRA notices to Plaintiff and the putative Annapolis Class Members violated 15 U.S.C. § 1681b(b)(3).

57.     The conduct, actions, and inaction of Defendant Annapolis were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

58.     Plaintiff and other members of the Annapolis Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant Annapolis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

59.     As a result of these FCRA violations, Defendant Annapolis is liable to Plaintiff and to each Annapolis Class Member, for statutory damages from $100 to $1,000, punitive damages, and for their attorney's fees and costs.

### COUNT II: VIOLATION OF 15 U.S.C. § 1681b(b)(3)
### Class Claim against Defendant North

60.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

61.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "North Class") against Defendant North, defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) within the two years immediately preceding the filing of this Complaint; (a) who authorized E-Verifile to obtain a consumer report for an employment purpose; (b) where North used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one criteria for denial of access to CSX property; (d) North relying on such consumer report, in whole or in part; took adverse action against such person; (e) such adverse action was based in whole, or in part, on the consumer report; and (f) North failed to provide such person

with a copy of their E-Verifile consumer report and a description in writing of the rights of such person under 1681g(c)(3) before taking such adverse action.

62. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class Members are so numerous that joinder of all is impractical. Plaintiff estimates that the North Class is comprised of potentially dozens of consumers. The names and addresses of the North Class Members are identifiable through documents maintained by North and the North Class Members may be notified of the pendency of this action by published and/or mailed notice.

63. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the North Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant North provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether Defendant North's conduct violated the FCRA; and (c) whether Defendant North acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

64. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each North Class Member and all are based on the same facts and legal theories. Upon information and belief, it is Defendant North's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the North Class.

65. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the North Class. Plaintiff has retained Counsel experienced in handling

actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

66. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the North Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant North's conduct. It would be virtually impossible for the members of the North Class, individually, to redress effectively the wrongs done to them. Even if the members of the North Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant North's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

67. Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

68. **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of

adjudications with respect to individual North Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

69.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendant North acted on grounds generally applicable to the Class thereby making appropriate declaratory relief with respect to the Class as a whole.

70.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the North Class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.   Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Defendant North's FCRA violations would likely be unaware of their rights under the law, or of whom could represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant North's conduct. By contrast, the class action device will result in

substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time.  One win for one consumer would set the law as for every similarly situated consumer.

71.     Defendant North's failure to timely provide the required FCRA notices to Plaintiff and the putative Class Members violated 15 U.S.C. § 1681b(b)(3).

72.     The conduct, actions, and inaction of Defendant North were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

73.     Plaintiff and other members of the North Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant North in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

74.     As a result of these FCRA violations, Defendant North is liable to Plaintiff and to each North Class Member, for statutory damages from $100 to $1,000, punitive damages, and for their attorney's fees and costs.

## COUNT III: VIOLATION OF 15 U.S.C. § 1681b(b)(3)
### Class Claim against Defendant CSX

75.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

76.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "CSX Class") against Defendant CSX defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) within the two years immediately preceding the filing of this Complaint; (a) who authorized E-Verifile

to obtain a consumer report for an employment purpose; (b) where CSX used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one of CSX's criteria for denial of access to its property; (d) CSX, intending to take such adverse action, automatically caused the e-RAILSAFE program to generate the uniform, written adverse-action notice denying access to its property; (e) such adverse action was based in whole, or in part, on the consumer report; and (f) CSX failed to provide such person with a copy of their E-Verifile consumer report and a description in writing of the rights of such person under 1681g(c)(3) before taking such adverse action.

77.   **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class Members are so numerous that joinder of all is impractical. Plaintiff estimates that the CSX Class is comprised of potentially hundreds if not thousands of consumers. The names and addresses of the CSX Class Members are identifiable through documents maintained by CSX and the CSX Class Members may be notified of the pendency of this action by published and/or mailed notice.

78.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the CSX Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant CSX provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether Defendant CSX's conduct violated the FCRA; and (c) whether Defendant CSX acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

79.   **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each CSX Class Member and all are based on the same facts and legal theories. Upon information and belief, it is Defendant CSX's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their

consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the CSX Class.

80.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the CSX Class. Plaintiff has retained Counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

81.     **Superiority.  Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the CSX Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant CSX's conduct. It would be virtually impossible for the members of the CSX Class, individually, to redress effectively the wrongs done to them. Even if the members of the CSX Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant CSX's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

82.     Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ.

P. 23(c)(4).

83.     **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).**
Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.
Prosecuting separate actions by or against individual class members would create a risk of
adjudications with respect to individual CSX Class Members that, as a practical matter, would
be dispositive of the interests of the other members not parties to the individual adjudications
or would substantially impair or impede their ability to protect their interests.

84.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil
Procedure is appropriate in that Defendant CSX acted on grounds generally applicable to the
Class thereby making appropriate declaratory relief with respect to the Class as a whole.

85.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil
Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of
the CSX Class predominate over any questions affecting an individual member. Each of the
common facts and legal questions in the case overwhelm the more modest individual damages
issues. Further, those individual issues that do exist can be effectively streamlined and resolved
in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and
efficient adjudication of the controversy. Consumer claims generally are ideal for class
treatment as they involve many, if not most, consumers who are otherwise disempowered and
unable to afford and bring such claims individually. Further, most consumers affected by
Defendant CSX's FCRA violations would likely be unaware of their rights under the law, or of
whom could represent them in federal litigation. Additionally, individual litigation of the

uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant CSX's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

86.     Defendant CSX's failure to timely provide the required FCRA notices to Plaintiff and the putative Class Members violated 15 U.S.C. § 1681b(b)(3).

87.     The conduct, actions, and inaction of Defendant CSX were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

88.     Plaintiff and other members of the CSX Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant CSX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

89.     As a result of these FCRA violations, Defendant CSX is liable to Plaintiff and to each 1681b Class Member, for statutory damages from $100 to $1,000, punitive damages, and for their attorney's fees and costs.

**WHEREFORE**, Plaintiff, TIFFANY SMITH, requests the following relief:

A.     That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her Counsel to represent the Classes;

B.     That judgment be entered for the Classes against Defendants for statutory and

punitive damages for their violations of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. §§ 1681n and/ or 1681o;

      C.      That the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

      D.      That the Court grant such other and further relief, including equitable and injunctive relief, as may be just and proper.

## DEMAND FOR TRIAL BY JURY

      Plaintiff demands trial by jury as to all issues against Defendants.

Dated: April 1, 2016               Respectfully Submitted,


                           /s/ *E. David Hoskins*
                           E. David Hoskins, Esq. , No. 06705
                           THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                           16 East Lombard Street, Suite 400
                           Baltimore, Maryland 21202
                           (410) 662-6500 (Tel.)
                           davidhoskins@hoskinslaw.com


                           /s/ *Steven B. Isbister*
                           Steven B. Isbister, Esq., No. 14123
                           THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                           16 East Lombard Street, Suite 400
                           Baltimore, Maryland 21202
                           (410) 662-6500 (Tel.)
                           stevenisbister@hoskinslaw.com