IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TIFFANY SMITH**, *on behalf of herself and all other similarly situated*,<br><br>     Plaintiff,<br><br>v.<br><br>**ANNAPOLIS JUNCTION RAIL SOLUTIONS, LLC et al.**,<br><br>     Defendants. | CASE NO. 1:16-cv-00968<br><br>MAGISTRATE JUDGE<br>TIMOTHY J. SULLIVAN |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT, APPOINTING CLASS COUNSEL, DIRECTING NOTICE TO THE CLASS, AND SCHEDULING FINAL FAIRNESS HEARING**

Now comes the Named Plaintiff, Tiffany Smith, by and through counsel, and hereby moves the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, appointment of Class Counsel, and approval of form and manner of notice. A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted,

*/s/ E. David Hoskins*
E. David Hoskins, Esq., No. 06705
The Law Offices of E. David Hoskins, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland  21202
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
dhoskins@hoskinslaw.com

John C. Bazaz, Esq. (admitted pro hac vice)
Law Offices of John C. Bazaz, PLC

4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
Email: jbazaz@bazazlaw.com

Leonard A. Bennett,
Esq. (admitted pro
hac vice)
Craig C. Marchiando
CONSUMER LITIGATION
ASSOCIATES, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
Email: lenbennett@clalegal.com
craig@clalegal.com

Matthew A. Dooley, (admitted
pro hac vice)
Anthony R. Pecora
O'TOOLE MCLAUGHLIN
DOOLEY & PECORA, CO. LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Email:
mdooley@omdplaw.com
apecora@omdplaw.com

*Attorneys for Plaintiff Tiffany Smith*

**MEMORANDUM IN SUPPORT**

Plaintiff, Tiffany Smith, individually and on behalf of all other similarly situated individuals, by Counsel, submits this Memorandum in support of her Motion for Preliminary Approval of Class Settlement, Conditionally Certifying Classes for Purposes of Settlement, Appointing Class Counsel, Directing Notice to the Class, and Scheduling Final Fairness Hearing.

**I.  INTRODUCTION**

Defendant CSX Transportation, Inc. ("Defendant" or "CSXT") is a Class I railroad in the United States, owning about 21,000 route miles. CSXT hires contractors, such as Annapolis Junction Rail Solutions, LLC and North American Rail Solutions, LLC,[1] to work on their properties. In turn, the contractors hire employees, who during the relevant time period at issue in this litigation were required to submit to a background check through a program named e-RAILSAFE. The e-RAILSAFE program allowed CSXT to monitor and maintain a history of anyone who has had or currently maintained access to its property or the property of its corporate affiliates. Each individual who works for a contractor must undergo a background check and receive a proper identification badge to gain access to the railroad's property or the property of one of its corporate affiliates. Individuals who cannot obtain this certification are unable to work in a position that requires access to CSXT's property or the property of its corporate affiliates.

The e-RAILSAFE program is offered through non-party E-Verifile.com, Inc., a consumer reporting agency, and the reports generated by the program are consumer reports

---

[1] Defendants Annapolis Junction Rail Solutions, LLC and North American Rail Solutions, LLC, were voluntarily dismissed from this action on July 19, 2017. (Doc. 54.)

under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"). Plaintiff alleges that because the consumer reports CSXT obtained through the e-RAILSAFE program were used for the purpose of determining eligibility for employment, CSXT was required to provide Plaintiff and other e-RAILSAFE applicants with timely notice required by the FCRA prior to taking any adverse action against them. 15 U.S.C. § 1681b(b)(3).

Plaintiff alleges that CSXT violated the FCRA by failing to provide certain consumers with a copy of their consumer report and a description in writing of their rights before taking an adverse action against them. 15 U.S.C. § 1681b(b)(3). CSXT denies these allegations, and maintains that it complied with the FCRA at all times. After a full-day mediation under the auspices of this Court, the parties have come to a resolution of this case. A discussion of the litigation and the reasons for approval of the settlement follows.

## II.   PROCEDURAL HISTORY

On April 1, 2016, Plaintiff filed suit against Annapolis Junction Rail Solutions, LLC, North American Rail Solutions, LLC, and CSX Transportation, Inc. on behalf of herself and all other similarly situated individuals alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a-1681x. (Doc. 1). On May 1, 2017, the case was referred to Magistrate Judge Jillyn K. Schulze for Settlement. (Doc. 50.) On July 19, 2017, Plaintiffs filed a Stipulation of Dismissal as to Defendants Annapolis Junction Rail Solutions, LLC and North American Rail Solutions, LLC. (Doc. 54.) On August 10, 2017, Plaintiff and CSXT participated in a settlement conference, which ultimately resulted in the proposed Class Settlement.

## III.   PLAINTIFF'S CLAIMS

The FCRA is a consumer protection statute that sets out the requirements that a person

must follow when it wishes to take an adverse action based on a consumer report that was used for an employment purposes. Prior to acting:

> Except as provided in subparagraph (B) [inapplicable here], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates--
>
> (i)  a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed [ ] under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3)(A).

Plaintiff alleges that CSXT, through the e-RAILSAFE program, used a consumer report for an employment purpose and that CSXT was therefore required by 15 U.S.C. § 1681b(b)(3)(A) to provide to Plaintiff and putative Class Members a copy of the report and a description of their rights prior to taking any adverse action against them. Plaintiff further alleges that CSXT did not comply with the FCRA when using consumer reports obtained through the e-RAILSAFE program because it did not provide consumers with copies of their reports or a description of their FCRA rights prior to an adverse action being taken. The Parties estimate that 3,511 consumers comprise the Class.

Liability under the FCRA is not strict and arises only upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n & 1681o. Further, unless there is a finding of a willful noncompliance, Plaintiff (and thus the Class) must establish actual damages. Statutory and punitive damages are available *only* where there is a finding of a willful violation. *See id.* As such, either the Class must proceed on a uniform "actual damages" claim, or it must pursue statutory and punitive damages under the more challenging "willfulness" standard of Section 1681n. The primary remedy sought by Plaintiff on a class basis was a statutory damage award of

between $100 and $1,000 predicated on proof of a willful FCRA violation. 15 U.S.C. § 1681n.

## IV. THE PROPOSED SETTLEMENT

Following the filing of the Complaint and CSXT's answer, and the exchange of written discovery and documents, the Parties discussed the feasibility of mediation as a means to resolve the litigation. The Parties sought the assistance of this Court to mediate this case. On August 10, 2017, the parties mediated this Action in front of Judge Schulze and ultimately reached an agreement.

Plaintiff believes that her claims have merit and that if the case did not settle she would prevail at trial. CSXT takes the opposite view. Specifically, CSXT argued that its conduct was not willful and that it was not subject to the FCRA provision at issue in Plaintiff's complaint. Regardless, it is understood that if the case proceeded to trial and Plaintiff failed to prove that CSXT was subject to and willfully violated the FCRA, her claims on behalf of the Settlement Class would fail, and she, along with any potential class member, would not be entitled to *any* monetary relief. But, if Plaintiff did prevail at trial, then she and any potential class member could seek to recover statutory damages between $100.00 and $1,000.00, plus attorneys' fees and potentially punitive damages under the FCRA.

Considering the uncertain outcome and the risk of further litigation, the Parties entered into the Settlement Agreement and Release.[2]

The settlement provides for cash disbursements to Settlement Class members, a *cy pres* trust, and an attorneys' fee award within the acceptable range for matters of this type. The salient terms are as follows:

---

[2] All defined terms shall have the same meanings used in the Settlement Agreement and Release attached hereto as Exhibit 1.

- CSXT agrees to pay two hundred and sixty-two thousand five hundred dollars ($262,500) (the "Settlement Fund"), from which the following payments to Class Members shall be made after payment of attorneys' fees and the costs of administration have been deducted:

    o <u>Notice Class Members (approximately 2,883 members)</u> – All natural persons residing in the United States (including all territories and other political subdivisions of the United States) from April 1, 2014 through March 15, 2017; (a) who authorized e-Verifile.com, Inc. to obtain a consumer report for an employment purpose; (b) where CSXT used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one of CSXT's criteria for denial of access to its property or the property of its corporate affiliates; (d) such person's e-RAILSAFE application was denied based in whole, or in part, on the consumer report; and (e) CSXT did not provide such person with a copy of his or her e-Verifile.com, Inc. consumer report and a description in writing of the rights of such person under 1681g(c)(3), a payment of approximately $36.00.

    o <u>Appeal Class Members (approximately 628 members)</u> – For applicants who meet the Class Definition above and who appealed CSXT's decision to deny them access to its property or the property of its corporate affiliates, a payment of approximately $75.00.

    o <u>Named Plaintiff Service Award</u> – CSXT does not oppose a claim for a Service Award not to exceed $10,000.00.

- CSXT does not oppose a petition for attorneys' fees and reimbursed costs in an amount not to exceed one-third of the Settlement Fund;

- No portion of the Settlement Fund will revert to CSXT;

- All uncashed checks shall be disbursed to a Court approved *cy pres* beneficiary, after any unexpected notice and administration expenses are paid.

- CSXT will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1715.

- Class Members release FCRA and FCRA-equivalent claims against CSXT.

- Class Notice will be direct, first-class mail, accomplished by a nationally known, third-party settlement administrator.

## V. CLASS CERTIFICATION

Federal Rule of Civil Procedure 23(a) requires that in order for a class action to

proceed it must be demonstrated that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

The Court must also find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FedR. Civ. P. 23(b)(3); *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974). District courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Telephone Co. v. Falcon,* 457 U.S. 147, 161 (1982). While the Court must conduct a rigorous analysis as to whether the standards of Rule 23 are met, the elements of typicality, commonality, and adequacy of representation tend to merge. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011).

### A.  Numerosity

"There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). In applying that rule, courts have consistently held that joinder is impracticable and numerosity is satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to classes with fewer than 50 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (a class of 18 members met numerosity requirement); *Jeffreys v. Communic'n Workers of Am.,* 212 F.R.D. 320, 322 (E.D. Va. 2003) ("where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

The Parties estimate that the Settlement Class consists of approximately 3,511 applicants who were the subject of an e-RAILSAFE consumer report between April 1, 2014 and March 15, 2017, and whose e-RAILSAFE application was denied based on that report. The size of this class is sufficiently large to determine that numerosity has been satisfied and that joinder of these Settlement Class members' claims is not possible.

### B.   Common Questions of Law or Fact

Commonality requires that there be at least one question of law or fact common to the members of the class. *Jeffreys*, 212 F.R.D. at 322. And, "the fact that there are some factual variances in individual grievances among class members does not defeat commonality." *Morris v. Wachovia Secs., Inc.*, 223 F.R.D. 284, 292 (E.D. Va. 2004) (citations omitted).

Here, the Settlement Class consists of individuals who were the subject of an e-RAILSAFE report used by CSXT but failed to receive a copy of the report or a description in writing of their rights under the FCRA prior to being denied access to the railroad's property or the property of its corporate affiliates. Each of these Settlement Class members was entitled to a pre-adverse action notice mandated by § 1681b(b)(3). The Settlement Class members' claims share common questions of law judged against common facts, all of which predominate over individual issues.

### C.   Typical Claims

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing FED. R. CIV. P. 23(a)(3)). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by

plaintiff's proof of his own individual claim." *Id.* at 466–67.

The scope of Plaintiff's claims here is coextensive with the one of the Settlement Class members. Moreover, the Plaintiff's interests are squarely aligned with the Settlement Class. In particular, Plaintiff's claims arise out of the exact same practices presented in the class allegations of her complaint. Plaintiff does not seek to pursue claims beyond those specifically addressed by the class settlement, and seeks the same remedy offered by the proposed Settlement.

Specifically, the Settlement addresses claims arising out of the alleged failure of CSXT to provide proper notice to the class members of the content of their consumer files and its effect on their employment prospects. These are the precise claims presented by Smith in this case, and therefore, Plaintiff's claims are typical of the common claims held by the class. Rule 23's commonality requirement has therefore been met as to the Settlement Class to be certified.

### D. Adequate Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection is determined by two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551, 558 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).

Plaintiff understands and accepts her responsibilities as class representative and has no interests that are adverse to the Class Members. Further, Plaintiff and the Settlement Class members sought uniform statutory damages resulting from CSXT's alleged violations of the

FCRA. There is no potential for conflicting interests in this action; there is no disagreement between Plaintiff's interests and those of the Settlement Class members.

When Class Counsel negotiated the settlement in this case, they made it their first priority to achieve the best possible outcome for the Class. This Court has recognized the advantages that experienced counsel with an expertise in both the factual and legal issues in a case present to both the parties and to the docket. *See S.C. Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

Class counsel have extensive collective experience in both consumer protection and class action litigation, having been involved in numerous, large consumer class actions where they have been found to be suitable Class Counsel. *See, e.g.*, *Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases."); *Hall v. Vitran Express, Inc.*, Case No. 1:09-cv-00800 (N.D. Ohio) (approved as Class Counsel in a nationwide class action under the FCRA); *Smith v. Sterling Infosystems-Ohio, Inc. et al.* Case No. 1:16-CV-714 (N.D. Ohio) (same); *Ryals v. HireRight Solutions, Inc., et al,* Case No. 3:09-CV-625 (E.D. Va.) (same); *Smith v. New England Motor Freight, Inc.,* Case No. 2:12-CV-03559 (N.J.D) (same); *Roe, et al. v. Intellicorp Records, Inc., et al.,* Case No. 1:12-CV- 02288 (N.D. Ohio) (same); *Avery v. Boyd Bros. Transportation*, Case No. 4:13-CV-00579 (W.D. Missouri) (same); *Smith v. ResCare,* Case No. 3:13-CV-5211 (S.D. W. Va.) (same); *Henderson, et al. v. First Advantage,* Case No.

3:14-CV-00221 (E.D. Va.) (same); *Henderson, et al v. BackgroundChecks.com*, Case No. 3:13CV-00029 (E.D. Va.) (same); *See White v. CRST, Inc.*, Case No. 1:11-cv-2615 (N.D. Ohio) (same). Equally important, Class Counsel have no conflict with the Class.

### E. Rule 23(b)(3) Factors

#### 1. Predominance

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and/or fact shared by the Settlement Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And, predominance exists where the resolution of class members' individual claims depend on examining common conduct by a defendant. *Jeffreys,* 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, and relate to alleged standardized procedures. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is necessary to satisfy predominance. Additionally, there are no other questions that require individual review, or that would otherwise shift the Court's focus away from this fundamental core set of common

issues.

### 2. Superiority

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[3] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D. at 323. The same is true here. Common issues predominate in the Settlement Class. Further, the individual claims of the members of the Settlement Class are small, thus providing little

---

[3] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Therefore, this criterion is not material to the Court's analysis in this litigation's current posture.

incentive for individual litigation, and the members of the Settlement Class are dispersed across the country. *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the case because the benefits of a class resolution of the issues described above outweigh the difficulties in management of separate, individual claims. Further, a class action will allow access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the damage claims that would be available to individuals. Moreover, apart from the fact that the settlement allows a recovery of damages, certification permits individual claimants to opt out and pursue their own actions separately if they believe that they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

### F. Preliminary Approval of Proposed Class Settlement

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See* FED. R. CIV. P. 23(e)(2); *see also* Manual for Complex Litigation (Fourth) ("MCL"), § 21.632 (4th ed. 2004).

The Fourth Circuit has bifurcated this analysis into consideration of the fairness of

settlement negotiations and the adequacy of the consideration to the class. *In re Jiffy Lube*, 927 F.2d at 158-59.  However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983)).

### 1. The Settlement Is Fair.

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case when the proposed settlement was reached; (2) the extent of discovery conducted; (3) the circumstances surrounding the settlement negotiations; and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158-59.

The proposed settlement in this case was reached only after an exchange of information regarding merits and class certification issues, including CSXT's responses to the targeted questions posed by Plaintiff. These independently support the conclusion that the posture of the action and the discovery conducted is such that the proposed settlement is fair, reasonable, and adequate. This action has been appropriately litigated by the Parties and sufficient discovery has been obtained by both Plaintiff and Defendant to assess the strength of their respective claims and defenses.

Further, the Parties have conducted arms'-length, contentious, and complicated negotiations through their Counsel. Courts have found that, where a settlement is the result of genuine arms'-length negotiations, there is a presumption that it is fair. *See, e.g., City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the settlement is fair.

Finally, Plaintiff's counsel are highly experienced in consumer class action litigation, and they endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

### 2. The Settlement Terms Are Adequate And Reasonable.

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the plaintiff's case on the merits; (2) any difficulties of proof or strong defenses the plaintiff would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendant and the probability of recovery on a litigated judgment; (5) the degree of opposition to the proposed settlement; (6) the posture of the case at the time settlement was proposed; (7) the extent of discovery that had been conducted; (8) the circumstances surrounding the settlement negotiations; and (9) the experience of counsel in the substantive area and class action litigation. *See In re Jiffy Lube*, 927 F.2d at 159.

While Plaintiff's counsel firmly believes in the merits of Plaintiff's claims, demonstrating liability on the FCRA claims at issue is not at all a certainty. As noted above, liability under the FCRA is not strict and arises only upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. CSXT contested liability in all regards. Further, unless there is a finding of willful noncompliance, Plaintiff (and thus the Class) must establish actual damages. Consequently, absent approval of the settlement, Plaintiff will be put to challenging proofs, including as to issues of willfulness, and all Parties face the prospect of a long and expensive litigation that would likely culminate in a trial on a class-wide basis and, thereafter, a lengthy

appeal (not to mention the likelihood of a requested interlocutory appeal relating to class certification under Rule 23(f)).

If the Court grants preliminary approval, then the Class Members will receive notice carefully explaining the terms of the Settlement Agreement and informing them of their right to object or opt out. Class Members who believe that their cases are even more valuable or who have actual damage claims in excess of these expected ranges can opt out and litigate their claims on an individual basis—though it bears mention that no Class Member other than Smith has sued CSXT on either an individual or class basis. While the degree of opposition to the Settlement Agreement cannot be known with certainty, the lack of any other competing class cases supports the strength of the settlement and the likelihood that it will stand. For these reasons, the opinion of all counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged.

**D.     The Proposed Notice and Notice Plan Satisfy Rule 23.**

Following preliminary approval, the class members must be given notice concerning the nature of the settlement and of their rights.  Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices to the Settlement Class, which are attached to the Settlement Agreement,

satisfy all of these requirements.

As set forth in the Settlement Agreement, to accomplish the contemplated class notice, CSXT will obtain from e-Verifile.com, Inc. a list of the Class Members from the records of e-Verifile.com. This process is already mostly complete, and the Parties do not anticipate any problems identifying Class Members. The Settlement Administrator will oversee the administration of the settlement and the notification to Class Members. The Settlement Administrator will be responsible for mailing the approved class action notices, after it has electronically checked and updated against the U.S.P.S. National Change of Address database. Any returned mail will also get a second level of review for re-mailing. Apart from individual mailed notice, the Notice Plan also provides that the Settlement Administrator will establish an internet website containing information about the Settlement and Class Members will have access to a telephone service that will answer questions concerning the settlement through a live representative.

As the Manual for Complex Litigation recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified, while notice through an internet website is a supplemental means of providing notice. *See* MCL, § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C., LLO*, 2013 U.S. Dist. LEXIS 155235, at *14–15 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notices and Notice Plan represent the "best notice that is practicable under the circumstances," and it therefore meets the notice requirements of Rule 23. Consequently, the Notices and Notice Plan should be approved by the Court.

## VI. CONCLUSION

The Settlement is an excellent result considering the specifics of this case. The terms of the Settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the requirements for preliminary approval.

WHEREFORE, Plaintiff requests that the Court issue an Order, substantially similar to the Proposed Order filed concurrently with this Motion, that: (1) grants preliminary approval to the Proposed Settlement; (2) approves of the Proposed Notice filed concurrently with this Motion; (3) orders that the Proposed Notice be immediately mailed to Class Members; (4) approves the appointment of American Legal Claims Services, LLC as the Settlement Administrator; (5) approves Defendant's Class Action Fairness Act notice; (6) and sets the date of the Final Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of this Motion.

Respectfully submitted,

*/s/ E. David Hoskins*
E. David Hoskins, Esq., No. 06705
The Law Offices of E. David Hoskins, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland  21202
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
dhoskins@hoskinslaw.com

John C. Bazaz, Esq. (admitted pro hac vice)
Law Offices of John C. Bazaz, PLC
4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
jbazaz@bazazlaw.com

Leonard A. Bennett, Esq. (admitted pro hac vice)

Craig C. Marchiando
CONSUMER LITIGATION ASSOCIATES, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
lenbennett@clalegal.com
craig@clalegal.com

Matthew A. Dooley, (admitted pro hac vice)
Anthony R. Pecora
O'TOOLE MCLAUGHLIN DOOLEY &
PECORA, CO. LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
mdooley@omdplaw.com
apecora@omdplaw.com

*Attorneys for Plaintiff Tiffany Smith*

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this 11th day of January, 2018, electronically filed Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Settlement using the CM/ECF system, which automatically sends email notification to the attorneys of record.

*/s/ E. David Hoskins*
