## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TIFFANY SMITH AND LUIS M. MORALES**, *on behalf of themselves and all other similarly situated*, | CASE NO. 1:16-cv-00968 |
| v. | MAGISTRATE JUDGE TIMOTHY J. SULLIVAN |
| **ANNAPOLIS JUNCTION RAIL SOLUTIONS, LLC et al.,** | |
| Defendants. | |

---

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, DISMISSAL OF CLAIMS WITH PREJUDICE, AND AWARDING ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

---

Now come the Named Plaintiffs, Tiffany Smith and Luis M. Morales, by and through counsel, and hereby move the Court pursuant to Fed. R. Civ. P. 23 for final approval of the class settlement, dismissal of claims with prejudice, and award of attorneys' fees, costs and service awards. A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted,

*/s/ E. David Hoskins*
E. David Hoskins, Esq., No. 06705
The Law Offices of E. David Hoskins, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland  21202
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
dhoskins@hoskinslaw.com

John C. Bazaz, Esq. (admitted pro hac vice)
Law Offices of John C. Bazaz, PLC

4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
Email: jbazaz@bazazlaw.com

Leonard A. Bennett,
Esq. (admitted pro
hac vice)
Craig C. Marchiando
CONSUMER LITIGATION
ASSOCIATES, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
Email: lenbennett@clalegal.com
craig@clalegal.com

Matthew A. Dooley, (admitted
pro hac vice)
Anthony R. Pecora
O'TOOLE MCLAUGHLIN
DOOLEY & PECORA, CO. LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Email:
mdooley@omdplaw.com
apecora@omdplaw.com

*Attorneys for Plaintiffs Tiffany Smith*

## MEMORANDUM IN SUPPORT

Plaintiffs, Tiffany Smith and Luis M. Morales, individually and on behalf of all other similarly situated individuals, by Counsel, submit this Memorandum in support of their Motion for Final Approval of Class Settlement, Dismissing Claims with Prejudice, and Awarding Attorneys' Fees, Costs and Service Awards. The Class has received notice, only one Class Member has excluded himself and only one has objected based upon an apparent misunderstanding of the scope of the release of claims. In short, nothing material has changed since Court's grant of preliminary approval, confirming that the Settlement is fair, reasonable, and adequate and therefore warrants final approval.

## I.    INTRODUCTION

This case presents a nationwide class action filed under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x. ("FCRA").  Plaintiffs' Class Complaint names Tiffany Smith and Luis M. Morales as Plaintiffs, and CSX Transportation, Inc. ("Defendant" or "CSXT"), as Defendant. (Docs. 1, 69.) Plaintiffs assert class claims against Defendant based on its use of consumer background reports for employment purposes. After arms'-length mediation under the auspices of this Court and formal discovery, the Parties entered into a Stipulation of Settlement (the "Settlement Agreement"). The Court considered the Parties' Motion for Preliminary Approval and granted preliminary approval of the Settlement on January 29, 2018 (Doc. 65.) The Settlement Administrator notified the more than 3,438 consumers making up the two Sub-Classes in a Court-approved mailing. (Ex. 1, Declaration of Keith Salhab ("Salhab Decl.") ¶ 5.) Pursuant to Federal Rule of Civil Procedure 23, the Parties are now seeking final approval of the proposed class action settlement. Specifically, the Parties request that the Court finally certify the proposed Class and

the proposed Class Settlement,[1] award attorneys' fees, costs, and the Class Representative Service Awards, and dismiss the claims with prejudice.

Having carefully overseen preliminary approval of the Settlement, the Court's role now is to determine whether the Settlement comports with Rule 23(e)(1)(C), which permits a court to approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." The Fourth Circuit has established what has become known as the *Jiffy Lube* standard to guide courts in this fairness analysis. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). There are two parts to the Rule 23(e) consideration: (1) reasonableness and adequacy of the settlement—whether the Class recovery is adequate versus what the Class give up;[2] and (2) fairness—the process question as to how the settlement came about.[3]

First, the Settlement remains an excellent result for the Class. The Settlement sends automatic cash payments to every Settlement Class Member without them having to do anything. No claim process is required, and remaining funds do not revert back to the Defendant. In exchange, Class Members provide an appropriate release. And this result was obtained with questions remaining as to Defendant's willfulness, a necessary proof for the recovery of any

---

[1] All capitalized terms used herein have the meanings set forth in this memorandum or in the Agreement.

[2] The "adequacy" aspect considers: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 158–59.

[3] These "fairness" considerations include: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." *Jiffy Lube*, 927 F.2d at 158–59.

damages. There has only been one objection to the Settlement, and only one Class Member has opted out. Thus, the Settlement is "reasonable and adequate." FED. R. CIV. P. 23(e)(1)(C).

Second, the Settlement occurred after sufficient litigation and a mediation facilitated by the Court, leaving no question that negotiations were conducted in an arm's-length manner. There was absolutely no coercion and Class Counsel was more than equipped to litigate aggressively and effectively on behalf of the Class. Thus, the Settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

## I.    THE COURT'S GRANT OF PRELIMINARY APPROVAL.

The case background, nature of Plaintiffs' claims, Settlement structure, and class certification analysis are detailed in Plaintiff's Memorandum in Support of their Motion for Preliminary Approval. (Doc. 64.)

### A. Plaintiff's Claims and Defendant's Willfulness.

The claims subject to the Settlement were pleaded in Plaintiffs' Class Action Complaint (Docs. 1, 69), which alleges that that CSXT violated the FCRA by failing to provide certain consumers with a copy of their consumer report and a description in writing of their rights before taking an adverse action against them. 15 U.S.C. § 1681b(b)(3). Defendant denies all of Plaintiffs' claims and further denies any wrongdoing, any liability to Class Members, and that class treatment is appropriate outside the settlement context.

Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n & 1681o. Further, unless there is a finding of a willful noncompliance, Plaintiffs (and thus the Class) must establish actual damages. Statutory and punitive damages are *only* available where there is a finding of a willful violation. *See id.* As such, either the Class must proceed on a uniform "actual damages" claim, or they must pursue statutory

and punitive damages under the more challenging "willfulness" standard of Section 1681n. Plaintiffs here seek the latter and have settled their and the Class's claims on that basis.

In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To overcome this hurdle, it is the plaintiff's burden to prove that a Defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

Because of perceived difficulties for Plaintiffs to show willfulness, Defendant deny liability under the FCRA.[4]  However, to the extent that any violations of the FCRA were found, Defendant further denies that any such violations were the result of willful misconduct.

**B.  The Lengthy Litigation of the Dispute.**

On April 1, 2016, Plaintiff filed suit against Annapolis Junction Rail Solutions, LLC, North American Rail Solutions, LLC, and CSX Transportation, Inc. on behalf of herself and all other similarly situated individuals (Doc. 1).[5] Following the filing of the Complaint and CSXT's answer, and the exchange of written discovery and documents, the Parties discussed the feasibility of mediation as a means to resolve the litigation. The Parties sought the assistance of this Court to mediate this case and the case was referred to Magistrate Judge Jillyn K. Schulze for Settlement. (Doc. 50.). On August 10, 2017, the parties mediated this Action in

---

[4] Likewise, Defendants deny that the case was capable of Rule 23 certification.
[5] On July 19, 2017, Plaintiffs filed a Stipulation of Dismissal as to Defendants Annapolis Junction Rail Solutions, LLC and North American Rail Solutions, LLC. (Doc. 54.)

front of Judge Schulze and ultimately reached an agreement.

## II. THE SETTLEMENT OF THE CLASS CLAIMS.

**A.     The Settlement Class.**

Under the Settlement Agreement, the Parties agreed to resolve the claims of the Class of

persons defined and certified by the Court as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) from April 1, 2014 through March 15, 2017; (a) who authorized e-Verifile.com, Inc. to obtain a consumer report for an employment purpose; (b) where CSXT used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one of CSXT's criteria for denial of access to its property or the property of its corporate affiliates; (d) such person's e-RAILSAFE application was initially denied based in whole, or in part, on the consumer report; and (e) CSXT did not provide such person with a copy of his or her e-Verifile.com, Inc. consumer report and a description in writing of the rights of such person under 1681g(c)(3).

**1.     Notice Sub-Class.**

"Notice Class" means all members of the Settlement Class who did not appeal Defendant's

decision to deny them access to its property or the property of its corporate affiliates. The Notice

Sub-Class is comprised of 2,744 individual members.

**2.     The Appeal Sub-Class.**

"Appeal Class" means all members of the Settlement Class who appealed Defendant's

decision to deny them access to its property or the property of its corporate affiliates. The Appeal

Sub-Class is comprised of 694 individual members.

**B.     The Consideration Provided To The Class.**

Plaintiffs were able to negotiate a settlement structure paying real money to Class Members

without imposing an arduous or difficult claims process, despite the fact that Plaintiffs faced

substantial merits defenses to willfulness. Checks will arrive automatically, without Class

Members having to do anything.

Defendant will pay Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500.00) to settle the claims of the Class.  The Settlement provides a substantial monetary net benefit of approximately $36.00 to each Notice Class Member and approximately $75.00 to each Appeal Class Member.  In addition to the lack of any claims process at all, Class Members will receive these payments without having to prove any harm whatsoever or make the more-difficult showing of willfulness. And these payments will be the full amount Class Members will receive after the deduction of the costs of administration of approximately $15,000.00, proposed Service Award of $10,000.00 for the Class Representatives,[6] and $87,500.00 in attorneys' fees and costs. Finally, any funds remaining in the Settlement Fund after distribution to Class Members and payment of any unexpected administration costs will be distributed to the Maryland Volunteer Lawyers Service, Inc. as *cy pres*.

## C. The Notice Process Is Complete As The Court Has Instructed And Under The Governing Law.

In its Preliminary Approval decision and subsequent rulings, the Court approved and ordered sent two mail notice packets to Class Members. To facilitate this process, the Parties engaged the nationally known settlement administrator American Legal Claim Services, LLC ("ALCS"). (Doc. 64-1, ¶ 3.2.) ALCS was tasked not only with printing, processing, and mailing the notices, but also with updating addresses on Class Members whose notices were returned undeliverable. (Ex. 1, Salhab Decl. ¶¶ 2-5.) ALCS is experienced in administering large class settlements, especially complex class settlements. Class Counsel supervised and had input into all actions taken by the Administrator to date.

Class Notice in this context is a fairly well-established process. An experienced administrator like ALCS is critical to the success of the mailed-notice program from the beginning

---

[6] Class Counsel seek $8,000.00 for Tiffany Smith and $2,000.00 for Luis M. Morales.

when the class list is provided by the Defendant. In this case, the Administrator received the Class lists from Defendant, which were then processed through the National Change of Address Database if any Class Member addresses proved stale. (*Id.* ¶ 4.) ALCS mailed the Court-approved Settlement Class Notices via first class U.S. Mail to all 2,744 Notice Class Members and 694 Appeal Class Members. (*Id*. ¶ 5.)

After the initial mailing, the Postal Service returned 888 Notice Class notices as undeliverable and without forwarding addresses, and ALCS used a third-party service to attempt to update the addresses for those Class Members. (*Id.* ¶ 6.) After this update, ALCS obtained new addresses for and re-mailed 565 of those Class Members' notices. (*Id*.) Following the two mailings and attempts to obtain valid addresses from the most commonly used sources, 323 Notice Class Members' notices remain undeliverable and all Appeal Class notices are deemed delivered. (*Id*. at ¶ 7.) All told, ALCS estimates that it successfully mailed notice to 3,115 Class Members, a reach of 91 percent. (*Id.* ¶ 8.)

ALCS set up and maintained an Internet website dedicated to the Settlement, and posted on that site key documents, dates, and contact information for Class Counsel and ALCS. (*Id.* ¶ 13.) The website also allowed Class Members to email questions to ALCS. (*Id.*)

ALCS also established and maintained a toll-free number dedicated to this case, to receive calls from Class Members with questions about the Settlement. (*Id.* ¶ 11.) ALCS received 69 calls on that line. (*Id.* ¶ 11.) Separately, Class Counsel's contact information and telephone number were included in the notice materials, and Class Counsel received and handled direct, live calls from Class Members. (Ex. 2, Declaration of John Bazaz ¶ 18.)

The mailed notice process was certainly the best available given the circumstances of this case, given the fact that the Defendant was able to obtain reliable addresses and that the

Administrator assisted in developing the address list using a commercially available database. (Ex. 3, Declaration of Leonard A. Bennett ¶ 22.) While it is almost always difficult to obtain current addresses and identification information on Class Members, especially when a consumer may be facing difficulty finding employment, the Parties and Administrator were able to minimize that problem. A 91% successful-mail-delivery rate is remarkable— and much better than the typical 20% undeliverable rate ordinary obtained (and approved by the Court).[7]

**D.    Class Members Overwhelmingly Support The Settlement, And There Are No Governmental Objectors.**

Class Member reaction to the Settlement, which has been overwhelmingly positive, confirms that it is adequate. There is only one objection, and only one Class Members has validly opted-out of the Settlement. (Ex. 1, Salhab Decl. ¶ 9.)

John Williams, III objected to the settlement amount because he was denied access to a property due to an inaccurate background check, causing him to lose 60 to 70 hours of work. This objection is not well founded because, as highlighted below, nothing in the settlement otherwise precludes Mr. Williams from pursuing an individual claim against the background check companies under 15 U.S.C. § 1681e(b) and this claim has not been released in this settlement. Mr. Bazaz spoke with Mr. Williams and explained that this § 1681e(b) claim was not affected by the settlement. Mr. Williams indicated that he understood the information that was provided to him by Mr. Bazaz. The release in the settlement agreement specifically reserves class members' rights to pursue claims against the parties who created the background check reports and other railroads.

---

[7] In fact, the 80% target to which Counsel ordinary aspires and the Court typically considers is already well above the "reasonable notice" thresholds used in other venues. *See Alberton v. Commn'w Land Title Ins. Co.*, No. 06-3755, 2008 WL 1849774, at *3 (E.D. Pa. Apr. 25, 2008) (finding as sufficient direct notice projected to reach 70% of class plus publication in newspapers and Internet); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006) (approving of direct mail to 55% of class and publication in three newspapers and Internet).

Finally, Mr. Williams also had the right to opt out of the settlement and seek higher damages against the settling Defendant.

While Counsel is of course cognizant that opinions from Class Members matter and none are to be lightly dismissed, here there is no Class Member who has provided a persuasive reason to reject the Settlement.

Likewise, Defendant have confirmed that it served the required Class Action Fairness Act notices on the state and federal attorneys general on January 18, 2018.

**E.    The Release Of Claims.**

In return for the substantial cash payment Class Members will receive, they will release all claims against Defendant, as follows:

> The Settlement Class members will release all claims under the Federal Fair Credit Reporting Act ("FCRA") and under comparable state law, including the FCRA State Equivalents, except as otherwise provided in section 9.2 below.  All such claims will be released in full in favor of Defendant and its parents, subsidiaries, and affiliates (the "corporate affiliates"), and its and their present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, managers, shareholders, predecessors, successors, representatives, trustees, principals, insurers, and assigns, individually, jointly and severally.  **The Parties do not intend by this release to include any consumer reporting agencies**.  **This release is not intended to apply to Defendant's contractors or other railroad companies including, but not limited to, BNSF Railway Company, Canadian Pacific Railway Limited, Canadian National Railway Company, Consolidated Rail Corporation, Norfolk Southern Railway Company, Union Pacific Railroad Company and their corporate affiliates**.

(Doc. 64-1 ¶ 9.1.) (emphasis supplied).

No unrelated third parties are included in the release. This means that any FCRA claims that are typically tied to quantifiable, actual damages—like those for inaccuracy of reporting or failure to conduct a reasonable investigation of a dispute—survive because they must be asserted against credit reporting agencies, not employers like Defendant.

### III.   THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT.

**A.   Nothing Material Has Changed Since Preliminary Approval, Giving The Court No Cause To Overturn That Decision.**

**1.   The standards for approval of class action settlements.**

Settlement by compromise is part of a strong judicial policy favoring resolution of litigation prior to trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (noting "[t]he voluntary resolution of litigation through settlement is strongly favored by the courts") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeal while simultaneously reducing the burden on judicial resources. As the court in *South Carolina National Bank* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

*Id.* (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

To safeguard the interests of the absent class members, all class settlements and the corresponding later dismissal of the case require court approval. FED. R. CIV. P. 23(e)(1)(A). Rule 23(e) imposes two basic requirements before approval of a class settlement and dismissal. First, the Court must determine that notice was directed "in a reasonable manner to all class members." FED R. CIV. P. 23(e)(1)(B). Second, the Court must determine that the settlement "is fair, reasonable, and adequate." FED R. CIV. P. 23(e)(1)(C).

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.

2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Rule 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

Despite the policy favoring settlement, in a class action, a court may approve a settlement only after a hearing and upon a finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by- case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S.C. Nat'l Bank*, 139 F.R.D. at 339).

In determining whether a given settlement is reasonable, the court should avoid transforming the hearing on the settlement into a trial on the merits regarding the strengths and weaknesses of each side of the case. *Flinn v. F.M.C. Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975). Ultimately, the approval of a proposed settlement agreement is in the sound discretion of the Court. *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (citing *Jiffy Lube*, 927 F.2d at 158).

### 2.    The notice to Class Members met the requirements of due process.

In a settlement class maintained under Rule 23(b)(3), the class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Rule 23(e) specifies that

class actions may not be settled without court approval and notice to class members. FED. R. CIV. P. 23(e). Rule 23(c)(2) requires that notice to the class be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c). The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.312 (4th 2004).

The class list was compiled by Defendant and with the assistance of the Administrator and Class Counsel, reasonable measures were taken to locate updated addresses for the Class Members. As this Court has held, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'" *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted). The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985), and as addressed above, other courts— including this Court and others within the Fourth Circuit—have approved mailed- notice programs that reached a much smaller percentage of class members than this class notice reached. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, No. 3:05cv00143 (E.D. Va. Aug. 29, 2006) (granting final approval where class notice had approximately 85% delivery).

The Parties' efforts to provide Class Members with notice of the Settlement makes it clear that such notice was the best available notice under the circumstances given: (a) the available information; (b) the possible identification methods; (c) the number of Class Members; and (d) the amount of the Settlement. The Parties have complied fully with the Court's Preliminary Approval Order, and have taken reasonable steps to ensure that the Class Members were notified—in the best and most direct manner possible—of the Settlement's terms and significant benefits.

3.     **An analysis of the *Jiffy Lube* factors confirms that the Settlement is fair and reasonable.**

The next phase of the Court's determination of compliance with Rule 23(e)(2) typically requires a two-part analysis, referred to in this Circuit as the *Jiffy Lube* factors. The Court must determine whether the settlement is "fair and reasonable," and then whether the settlement is "adequate." The approval of a proposed settlement agreement is in the sound discretion of the Court. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

The first step in the *Jiffy Lube* analysis is an analysis of the fairness of the settlement. The fairness factors are critical to the protection of the class members from unscrupulous class counsel and relate to whether there has been arm's-length bargaining. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983); *S.C. Nat'l Bank*, 139 F.R.D. at 339. The Court must consider four factors: (i) the posture of the case at the time of settlement; (ii) the extent of discovery that has been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel. *Jiffy Lube*, 927 F.2d at 158–59; *see also In re Microstrategy, Inc.*, 148 F. Supp. 2d at 663–64; *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995). A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's-length

negotiations. *See S.C. Nat'l Bank*, 139 F.R.D. at 339. As described below, the settlement reached in this case is clearly fair and each of the *Jiffy Lube* factors are satisfied.

The determination of the appropriate time at which to settle a case is one that is entrusted to experienced class counsel. It can be difficult to detour from a litigation track to a mindset that considers that every case—no matter how conceivably strong it may seem—will always have an element of risk. Settlement is the only outcome that allows both sides to be assured of a certain ending to the litigation, alleviating both the risk and cost inherent in further litigation to both sides, as well as the additional burden on the Court's already-strapped resources. This case was no exception, and in fair consideration of the strengths and weaknesses of the case, Plaintiffs' Counsel felt that settlement was appropriate at this juncture because sufficient discovery was conducted for both sides to assess the strength of their case and further litigation would simply increase costs without informing the risk of litigation. *See Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85CV4038, 1987 WL 7030, at *2 (S.D.N.Y. Feb. 13, 1987) (concluding that because continued prosecution of the action would have been expensive and time-consuming, and would have involved substantial risks, "it [was] not unreasonable for the plaintiff class to take a 'bird in the hand'"); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) (noting that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush'" in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation") (quoting *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 740 (S.D.N.Y. 1970)).

The proposed Settlement in this case was reached after both thorough discovery and a mediation supervised by a neutral magistrate judge, both of which independently support the conclusion that the posture of the action and the discovery conducted is such that the proposed

settlement is fair. (Ex. 3, Bennett Decl. ¶ 19.) Taken as a whole, there is little doubt that the decision to settle was as informed as it possibly could have been. This action has been appropriately litigated by the Parties and sufficient discovery has been obtained by both Plaintiffs and Defendant to assess the strength of their respective claims and defenses. (*Id.* ¶ 21.)

Further, the Parties have conducted arms'-length negotiations with Judge Schulze and with Counsel for the Parties. Courts have presumed settlements reached in that context to be fair. *See, e.g., City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the settlement is fair.

Class Counsel in this case are all highly-skilled and experienced consumer protection attorneys who have successfully litigated individual and class cases on behalf of consumers, and they endorse the settlement as fair and adequate under the circumstances. (Ex. 2, Bazaz Decl. ¶ 9; Ex. 3, Bennett Decl. ¶¶ 2–16, 21.) Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g., In re MicroStrategy*, 148 F. Supp. 2d at 665.

Moreover, there are advantages not only to the Parties, but also to the Court when opposing counsel are already experts on the legal and factual issues in a case and in a field of practice. *See S.C. Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where settlement discussions "were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of the subject law). Experienced counsel negotiated the Settlement, making it their first priority bringing the best benefit possible to their clients and,

therefore, to the Class. (Ex. 3, Bennett Decl. ¶ 20.) This Court and many others have found Class

Counsel qualified and adequate to represent a consumer class.[8]

Counsel's collective experience and expertise, together with discovery and trial

presentation sufficient to aid Counsel and the Court in evaluating Plaintiffs' claims and

Defendant's rebuttals, further point to the conclusion that the Settlement was the product of arm's-

length negotiation by experienced counsel and thus warrants final approval. *See Jiffy Lube*, 927

F.2d at 159; *see also Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501–02 (E.D.

Va. 1995) (concluding requirement met where "plaintiffs' counsel, with their wealth of experience

and knowledge in the securities-class action area, engaged in sufficiently extended and detailed

settlement negotiations to secure a favorable settlement for the Class").

### 4. The remaining *Jiffy Lube* factors confirm the Settlement terms are adequate.

In an analysis of the adequacy of a proposed settlement, the relevant factors to be

considered may include: (1) the relative strength of the plaintiff's case on the merits; (2) any

difficulties of proof or strong defenses the plaintiff would likely encounter if the case were to go

to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the

defendant and the probability of recovery on a litigated judgment; (5) the degree of opposition to

the proposed settlement; (6) the posture of the case at the time settlement was proposed; (7) the

---

[8] *See* Ex. 5, Declaration of David Hoskins ¶¶ 11-13. *See also, e.g.*, *Smith v. Sterling Infosystems-Ohio, Inc.*, No. 1:16-CV-714, 2017 WL 5067578, at *2 (N.D. Ohio Sept. 6, 2017)(Class Counsel has "fairly and adequately represented and protected the interests of all of the Class Members"); *Manuel v. Wells Fargo Nat'l Ass'n*, No. 3:14CV238, 2015 WL 4994549, at *15 (E.D. Va. Aug. 19, 2015) (finding Class Counsel "is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases"); *see also Soutter v. Equifax Info. Servs., LLC,* 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases."); *Williams v. Lexis-Nexis Risk Mgt.*, No. 3:06CV241 (E.D. Va. 2008).

extent of discovery that had been conducted; (8) the circumstances surrounding the settlement negotiations; and (9) the experience of counsel in the substantive area and class action litigation. *See Jiffy Lube*, 927 F.2d at 159.

While Plaintiffs' Counsel firmly believes in the merits of Plaintiffs' claims, demonstrating liability on the FCRA claims at issue is not at all a certainty. As noted above, liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. Defendant of course contested liability. Further, unless there is a finding of a willful noncompliance, Plaintiffs (and thus the Class) must establish actual damages. Consequently, absent approval of the Settlement, Plaintiffs would be put to challenging proofs, including as to Defendant's willfulness, and all Parties face the prospect of continued litigation through the completion of a trial and jury deliberations followed, thereafter, by a lengthy appeal. (Ex. 3, Bennett Decl. ¶ 23.)

It is convincing that despite the successful delivery of over 3,115 total notices, only one Class Member has objected and only one has opted out. "Such a lack of opposition to the partial settlement strongly supports a finding of adequacy, for '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.'" *In re Microstrategy*, 148 F. Supp. 2d at 668 (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)). "The small number of objections necessarily must be evaluated relative to the size of this Class of over 1.0 million members. In litigation involving a large class it would be 'extremely unusual' not to encounter objections." *See In re Anthracite Coal Antitrust Litig.*, 79 F.R.D. 707, 712–13 (M.D.Pa.1978), *aff'd in part,* 612 F.2d 571 and 612 F.2d 576 (3d Cir.1979)." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-79 (S.D.N.Y. 1998). Where "[t]he parties objecting to the settlements are both qualitatively and quantitatively

insignificant," their objections may be disregarded. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1327 (5th Cir. 1981), *cert. denied sub nom. CFS Continental, Inc. v. Adams Extract Co.*, 456 U.S. 998 (1982). Courts recognize that where the class as a whole supports a settlement, it should be approved.[9] Indeed, even a small majority of support creates a presumption in favor of approval. *See Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 174 (5th Cir. 1983) (approving class action settlement where more than 40 percent of class objected or opted out); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (nearly 50 percent opted out or objected; settlement nevertheless approved).

If the Court finally approves the Settlement, then the Class Members will receive genuine, cash relief without the need to show any harm whatsoever or that Defendant's conduct meets the standards for willfulness. Class Members believing their cases are even more valuable or who have actual damage claims in excess of these expected awards have had the opportunity to opt-out and pursue those claims on an individual basis. Only one has done so, further supporting the conclusion that the Settlement is adequate. The absence of any significant opposition to the Settlement, coupled with the lack of any other competing class cases supports the strength of the Settlement. For these reasons, the opinion of all Counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged. The Court should conclude likewise.

---

[9] *See, e.g., In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 180 (5th Cir. 1979; *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981) (small number of objectors demonstrates fairness of a settlement); *Shlensky v. Dorsey*, 574 F.2d 131 (3rd Cir. 1978) (same); *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus., Inc.)*, 494 F.2d 799, 803 (3d Cir.) (approving settlement where 20 percent opted out or objected); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987) (approving settlement with thirty-six objecting); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (granting approval where sixteen percent objected).

**B.     The Court Should Award The Proposed Attorneys' Fees, Costs, And Class Representative Service Award.**

      **1.     The Court should award the well-earned Service Award to Plaintiffs.**

Plaintiffs requests—and the Defendant do not oppose—a modest award of $10,000 for their participation in this case and service to the Class. In this case, Plaintiff Smith took an active role by answering discovery and remaining engaged in the case. (Ex. 2, Bazaz Decl. ¶ 15-16.) Plaintiff Morales has as well, albeit on a more limited basis as he was added as a Class Representative in April 2018. (*Id.* ¶ 17.) The Class Representatives understand their role as a class representative and were answerable to counsel in prosecuting the case. (*Id.* ¶¶ 16-17.)  Such awards in this amount and range are reasonable and appropriate. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). An empirical study published in 2006 suggests that the average award per class representative is about $16,000[.]" 4 NEWBERG ON CLASS ACTIONS § 11:38 (4th ed.).

There have been no objections to or comments regarding the Service Award, and Plaintiffs properly earned it through their unwavering participation in the case. The Court should therefore approve the award.

      **2.     The requested attorneys' fees and costs are appropriate and should be awarded.**

Plaintiffs' counsel has previously and consistently made the argument that a common fund settlement should pay class counsel based on the value produced for the class. In this case, counsel seek an award of $87,491.00, which is one-third of the Settlement Fund, but also below counsel's lodestar. Given the positive outcome for the class, and the fact that counsel's lodestar is above the requested fee award, the motion at bar should be granted.

### a. A percentage-of-the-fund award is appropriate and reasonable here.

The Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165–67 (1939); *Boeing Co. v. van Gemert*, 444 U.S. 472, 478–79 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common funds cases have historically been computed based on a percentage of the fund). The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970's. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also* MANUAL FOR COMPLEX LITIGATION § 24.121 at 210.

Since *Blum*, virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases. *See In re GMC Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821–22 (3rd Cir. 1995); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000).

In the Fourth Circuit, attorneys' fees in common fund cases such as this one are almost universally awarded on a percentage-of-the-recovery basis. *Manuel*, 2016 WL 1070819, at *5–6;

*Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *1 (M.D.N.C. Jan 10, 2007); *see DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang*, 890 F. Supp. at 502 (explaining "[a]lthough the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

The Fourth Circuit has not established a benchmark for fee awards in common funds cases, but district courts within the Fourth Circuit have noted that most fee awards range from 25 to 40 percent of the settlement fund.[10] Percentage-fee awards are exactly what the name suggests—class counsel's fees are determined as a percentage of the total settlement fund they are able to recover for the class. This Court has recognized the importance of incentivizing experienced class counsel to take on risky cases. *See In re Microstrategy*, 172 F. Supp. 2d at 788. In fact, a comprehensive study of attorneys' fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 31, 33 (2004). This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See In re Thirteen Appeals*, 56 F.3d at 295 (approving award of thirty percent

---

[10] Indeed, "empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in the class actions average around one-third of the recovery." 4 NEWBERG ON CLASS ACTIONS § 14:6 (4th ed.); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.31%" with a median value that "turns out to be one-third."). In an analysis of such historic patterns, Silber and Goodrich explained that empirical evidence does not necessarily establish what a court should do in any given case, but it does provide guidance to the court in determining whether a fee is reasonable. Reagan W. Silber & Frank E. Goodrick, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 REV. LITIG. 525, 545–46 (1998).

of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 (2d Cir. 1998) (table) (affirming district court's award of 25% of $1 million common fund) (unpublished); *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 (E.D. La. 2006)(concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys' fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC TV & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).

In this case, Defendant agreed not to oppose Class Counsel's fee and costs combined request of up to $87,491.00, and Counsel requests this amount. As with any class case that they agree to take on, Plaintiffs' Counsel live by the result that they obtain for the Class Members. That is true in cases that yield large fees as well as in cases like this one, which results in one at or below the reasonable lodestar incurred. In this case, where Class Counsel bore the risk of the litigation entirely and advanced significant funds in furtherance of the litigation, Class Counsel submits that the fee sought is reasonable.

      **b.**    **A cross-check against Counsel's lodestar confirms the requested fee is reasonable.**

A cross-check is not required to determine the fairness of a fee when the percentage-of-recovery method is used. However, courts have, on occasion, requested information regarding an estimate of Class Counsel's lodestar as a cross-check in determining the percentage of the common fund that should be awarded. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.724. Here, the requested award—$87,491.00—includes not only Counsel's attorneys' fees, but also the more than $2,880.74 in expenses Counsel has incurred in prosecuting this case. (Ex. 3, Bennett Decl. ¶ 24; Ex. 4, Declaration of Matthew A. Dooley ¶ 9; Ex. 5, Declaration of David Hoskins ¶ 20.)  Class Counsels' combined lodestar for this case exceeds $90,000.00 in fees and it has not been reimbursed for any of its expenses incurred. (Ex. 2, Bazaz Decl. ¶ 19; Ex. 3, Bennett Decl. ¶ 18; Ex. 4, Dooley Decl. ¶ 10; Ex. 5, Hoskins Decl. ¶ 16.) Additionally, Class Counsel will not be separately repaid for their expenses.

There should be no basis for the Court to conclude that the requested fee is unreasonable, and the Court should award it.

## IV. CONCLUSION.

The Settlement is an excellent result considering the contentiousness of the litigation and the lengthy litigation process. The terms of the Settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through the completion of trial and appeal, satisfy the strictures for final approval.

WHEREFORE, Plaintiffs respectfully request that the Court enter an order finally approving the class action settlement negotiated in this case.

Respectfully submitted,


*/s/ E. David Hoskins*
E. David Hoskins, Esq., No. 06705
The Law Offices of E. David Hoskins, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland  21202
(410) 662-6500 (Tel.)
(410) 662-7800 (Fax)
dhoskins@hoskinslaw.com

John C. Bazaz, Esq. (admitted pro hac vice)
Law Offices of John C. Bazaz, PLC
4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
jbazaz@bazazlaw.com

Leonard A. Bennett, Esq. (admitted pro hac vice)
Craig C. Marchiando
CONSUMER LITIGATION ASSOCIATES, PC
763 J. Clyde Morris Blvd., Suite 1-A Newport News, Virginia 23601
lenbennett@clalegal.com
craig@clalegal.com

Matthew A. Dooley, (admitted pro hac vice)
Anthony R. Pecora
O'TOOLE MCLAUGHLIN DOOLEY & PECORA, CO. LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
mdooley@omdplaw.com
apecora@omdplaw.com

*Attorneys for Plaintiffs Tiffany Smith*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have, on this 16th day of May, 2018, electronically filed Plaintiffs'

Unopposed Motion for Final Approval of Class Settlement using the CM/ECF system, which

automatically sends email notification to the attorneys of record.

*/s/ E. David Hoskins*
E. David Hoskins, Esq., No. 06705
*Counsel for Named Plaintiffs*